The opinion of the Court was drawn up by
Rice, J.
This action is case, for an injury to the plaintiff for disturbing him in the use of water by which the machinery of his bark mill was propelled. The case comes before us on a report of the evidence. It appears that the parties are owners and occupants of adjoining lots, deriving title from the same original grantors, Eunice and Samuel Kendall; that, running through the original lot, there is a small creek, or stream of water, on which there has long been a dam and mills, the right to which dam, and to the use of the water which is retained thereby, is now the matter in controversy.
In 1815, July 24, Eunice and Samuel Kendall conveyed lot No. 39 to Joshua G-. Kendall. The plaintiff claims title under this deed, and, though he has not produced deeds of a date anterior to the date of his writ, which connects him with that title, there is other evidence in the case, which will authorize us to infer that he now holds the title formerly held by Joshua Gf. Kendall.
That portion of the deed to Joshua Gf. Kendall, which is material in the present investigation, reads as follows: — “ Beginning at the south-west of said north half of said No. 39, thence north, on the west line of said lot, to the north-west corner, thence east, until it strikes the creek on which Mr. Holton’s mil} stands, thence south-westerly, on the viest bank of said creek, till you get within Jive rods of said Holton’s mill, thence, on a straight line, until it strikes the centre of the south line of said premises, being the north line of land owned by Dr. Rufus Cowles.”
This lot, which contains about 40 acres, it is conceded, lies wholly on the west side of the creek in question. Though there may be other facts presented by the evidence, which may be decisive of this case, the principal question in contro *11 versy between the parties, and tbe one which they desire to have determined, is whether, by the deed above cited, the grantee, now represented by the plaintiff, obtained the right to use the water from the creek for propelling the machinery of his bark mill. Whether he has this right or not, depends upon the fact, whether, by the construction of his deed, his grant is limited to the bank of the creek, or extends to the centre or thread of the stream. The creek, at the point in controversy, in its natural state, is a very small, unnavigable stream, being, at its widest point, not more than two rods, and, in some places, only from six to ten feet wide. From the point five rods below the location of the Holton mill, the line diverges from the creek. If that point of departure be fixed upon the bank of the creek, the divergence will be such as wholly to exclude the dam from the premises of the plaintiff, under the deed before named. If, on the other hand, the point of departure below the Holton mill, is fixed in the thread of the creek, filum medium aqua, the line thence will not diverge so far as wholly to exclude the dam, but will include that portion thereof into which the flume of the plaintiff has been inserted, and from which he draws water. It is for the interference, by the defendant, with the use of the water, thus drawn from the dam, that this action has been instituted.
Prima facie, the proprietor of each bank of a stream is the proprietor of half of the land covered by the stream. If the same person be the owner of the land on both sides of the river, he owns the whole river, to the extent of the length of his land upon it. 3 Kent’s Com. 228.
By the common law of England, which our ancestors brought with them, claiming it as their birthright, the owner of the land, bounded on a fresh water river, owned the land to the centre of the channel of the river, as of common right. Storer v. Freeman, 6 Mass. 435; Bradley v. Rice, 13 Maine, 198.
In this country, in consequence of the greater size and navigable character of many of our fresh water rivers, the English common law doctrine, in relation to the rights of riparian proprietors, has been qualified in some degree, and, *12 in many instances, restricted to non-navigable fresh water rivers. It is not, however, necessary to examine the extent of these restrictions or qualifications, in this case, as the creek, the right to use the water of which is now in controversy, is not only fresh water but in no sense navigable.
The plaintiff contends that, by the terms of the deed under which he holds, his land, so far as it is bounded on the west bank of the creek, extends to the centre of the stream. That the words, “ on the west bank of said creek,” are of precisely the same import and signification as would be the words “ on said creek,” or “ up said creek,” or “ by said creek,” or any other words of similar import, each and all of which, it is said, have been held to constitute the stream, thus referred to in a deed or grant, a monument, and extend the grant thus bounded to the centre thereof, usque ad jilum medium aqua.
Chancellor Walworth, in the case Canal Co. v. The People, 5 Wend. 423, says, “if the grant is bounded on the stream, or along the same, or by the margin thereof, or when any other words of similar import are used, the grant legally extends to the middle or thread of the stream; and not only the bank, but the bed of the river and the islands therein, and the exclusive right of fishing, are conveyed to the grantee, unless they are expressly reserved, or the terms of the grant are such as to show a clear intention to exclude them from the general operation of the rule of law.”
It was held, in Paul v. Carver, 26 Penn. State R. 203, that a tract of land bounded along the northerly side of Tidmarsh street, conveyed the grantor’s title to the grantee to the middle of that street.
It was decided in Starr v. Child, 20 Wend. 149, that the description in a deed of a lot of land, “ about 42 feet to the G-ennessee river, thence along the shore of the said river to Buffalo street,” carried the lot to the centre or thread of the river. In this case, it was held by Cowen, J., that bank, and shore, as applied to fresh water rivers, were equivalent terms.
The doctrine laid down in this case, has, however, been reconsidered, by the Court of errors in New York, and over *13 ruled in Child, v. Starr, 4 Hill, 369; same v. same, 5 Denio, 599; Halsey v. McCormick, 3 Kernan, 296.
It has been decided that the same principle applies to the construction of grants bounded generally upon highways, party walls, ditches, &c., as to fresh water streams. And it is undoubtedly true, that where a grant is bounded upon a non-navigable fresh water stream, a highway, a ditch or party wall, or the like, such stream, way, ditch or wall, are to be deemed monuments, located equally upon the land granted and the adjoining land, and in all such cases, the grant extends to the centre of such monument.
It is, however, competent for the grantor to limit his grant as he may choose. He may exclude or include the entire monument, and run his line on either side, or to the centre thereof, at his pleasure, by the use of apt words to indicate his intention so to do. The intention of the party is always to be sought in the interpretation of deeds, as in other written instruments. If the language leaves that. intention at all doubtful, the instrument should be examined and construed, when practicable, by the light of the circumstances which surrounded and were connected with the execution of the instrument.
To hold that a party may not bound a grant by the bank, margin, side, or shore of a stream of water, or by the side of a way, wall, ditch, or other similar object, would involve an absurdity. In all cases where the language used clearly shows such to be the intention of the grantor, the bank, side, margin, or shore, become themselves monuments, and are to be treated as such. Such is the rule of law. Starr v. Child, 5 Denio, 599; Halsey v. McCormick,3 Kernan, 296; Storer v. Freeman, 6 Mass. 435; Sizer v. Devereux, 16 Barb. 160; Hatch v. Dwight, 17 Mass. 289; Bradley v. Rice, 13 Maine, 198; Dunlap v. Stetson, 4 Mason, 349; 3 Kent’s Com. 434.
In Child v. Starr, 4 Hill, on page 375, Walworth, Chancellor, says: — “Bunning to a monument standing on the bank, and from thence running to the river, or along the river, &c., does not restrict the grant to the bank of the stream; *14 for the monuments, in such cases, are only referred to as giving the direction of the lines to the river, and not as restricting the boundary on the river. If the grantor, however, after giving the line to the river, bounds his land by the bank of the river, or describes his line as running along the bank of the river, or bounds it upon the margin of the river, he shows that he does not consider the whole alveus of the stream a mere mathematical line, so as to carry his grant to the middle of the river. And it appears to me equally clear that the grant is restricted when it is bounded by the shore of the river, as in the present case.”
What then is the true construction of the grant under which the plaintiff claims to hold ? The language of the deed seems to be unambiguous. The line extends to the creek, thence southerly on- the west bank of said creek, &c. The terms here used, if construed according to the ordinary signification of the words, clearly exclude the bed of the stream.
But if deemed ambiguous, and the language is interpreted in the light of the circumstances that surrounded the parties at the time of the grant in 1815, the result is the same. At that time, the location of the present dam was occupied by Holton’s dam and mill. The deed contains no words indicative of an intention to convey that mill or dam, or any portion thereof, or interest therein, or any right to the water privilege on which they stood. Yet, if the construction of the plaintiff were to prevail, the line of his lot would have run through the mill and dam, and included a portion of the water privilege. A fact so important could hardly have been overlooked by the parties to that deed.
Still further, the subsequent occupation of the parties, under that deed, has been such as to exclude the supposition that they understood that any portion of the mill, dam or privilege, was conveyed thereby. There is no evidence that Joshua G. Kendall ever occupied or claimed to occupy any portion of the privilege. He stood by and saw the defendant, after his purchase, rebuild the entire dam on the old site, and maintain the sole occupation thereof without objection. So, too, the *15 plaintiff, for several years after lie entered into possession, drew water from the dam under a written license from the defendant, paying rent therefor; thus, in the most distinct manner, admitting the sole right of the defendant.
In view, therefore, of the plain language of the deed, under which the plaintiff now claims title, and of the circumstances under which it was given; in view, also, of the contemporaneous and subsequent acts of the parties claiming under that deed, we can have no doubt as to its true construction — that the plaintiff’s lot is bounded by the bank of the creek, and does not extend to the centre or thread of the stream.
But if this were not so, still the present action could not be maintained. The evidence clearly shows that the defendant built the whole dam, and is now the owner thereof. The plaintiff has no title thereto, or any portion thereof. If it was originally placed upon his land without license, he might cause it to be removed as a nuisance, but he cannot compel the defendant to maintain any portion thereof. The defendant may permit the dam to fall to decay if he choose, or the water to run to waste, and not thereby subject himself to any liability to the plaintiff. The evidence does not disclose any privity or community of interest in the property of the dam between the parties. Jewell v. Gardiner, 12 Mass. 311.
From the view we have taken of the main question involved in this case, it is unnecessary to pursue this branch of the case further.
The defendant holds under a deed from Eunice and Samuel Kendall, dated Dec. 30, 1830. In that deed he is bounded on the land before deeded to Joshua Gr. Kendall. His lot contains about “two acres and thirty rods, more or less, together with the water privilege necessary for his trade.”
Under this deed, as we have already seen, he entered upon the premises and rebuilt the dam, which had been destroyed, on the old site, and has been in the sole occupation thereof, by himself, or those holding under him, until a short time before this action was commenced. It is contended by the plaintiff, that the latter words in the description of his deed, *16 cited above, are' words of limitation, and tend to show that he did not take the entire water privilege by his deed. Whether this be so, or not, cannot be material to the plaintiff in this action, because, if those words restrict the rights of the defendant, which may well admit of doubt, it is very clear they do not enlarge the original grant under which the plaintiff claims.
The deed from Joseph Kendall and others to the plaintiff, being of a date subsequent to the date of his writ, cannot affect the rights of the-parties in this suit.
According to the agreement of the parties, a nonsuit must be entered.
Tenney, C. J., Appleton, Hathaway, Cutting and G-oodenow, J. J., concurred.