SAMUEL MANLEY v. ALEXANDER CARL.

1 CONVEYANCE OF PROPERTY SUBJECT TO UNASSIGNED DOWER INTEREST.

S. M., tenant in common with R. M., conveyed to said R. M. by deed of release or quitclaim certain tracts of land described in the deed, which were subject to an unassigned dower. S. M. and his wife, in the deed, remised, released and forever quitclaimed unto the said R. M., his heirs and assigns forever, all their title, interest and estate, legal and equitable, except their right and title in the widow's dower in the premises described. Afterwards the widow's dower was assigned in 120 acres, a part of the lands described in the deed. *Held*, that S. M.'s grant to R. M. excepted the fee in that part or portion of the premises described in the deed, to-wit: in the 120 acres, in which said dower was assigned, and R. M. did not get title thereto under his quitclaim deed.

2. EXCEPTION NOT VOID FOR UNCERTAINTY.

The exception in said deed was not void for uncertainty. The quantities or boundaries of the land excepted could be shown by evidence, and the assignment of the dower.

3. FRAUD IN NEGOTIATING PURCHASE OF REAL ESTATE.

The buyer of real estate, who assumes to have special knowledge of the value and condition of the property, in regard to which the seller is ignorant, for the purpose of misleading him and inducing him to sell the same at less than its value, told him of facts and conditions calculated to depreciate the value of the premises, but omitted to disclose other facts within his knowledge which would have given correct information of their value, and by such means succeeded in buying the same at much less than their value. Such conduct on the part of the buyer is fraudulent, entitling the seller to set aside the conveyance.

APPEAL.

VOORHEES, J.

Plaintiff in his first cause of action set forth, that about October 25, 1894, he conveyed to the defendant his interest in the lands described in the petition, for the sum of $120. He claims at the time said conveyance was made he was the owner in fee of one-sixth of a tract of 120 acres

described, also the owner in fee of one-fifty-sixth part of certain other lands, described in the petition, as one of the heirs of his brother, James K. Manley, who died in 1864, without issue, unmarried and intestate; that the defendant misrepresented to him the condition and value of said lands; that they were worn out, of poor quality, etc.; that if plaintiff, who lived in Missouri, should go to Ohio to sell his interest in the lands he would be in danger of his life, claiming and representing that there were a dangerous and rough set of people living on the lands; that the amount he offered for said plaintiff's interest, to wit: $120, was more than his interest was then worth.

Plaintiff relying upon the statements of defendant as to the condition and value of said lands, and of the danger attending him should he return to Ohio to look after his interest, on October 25, 1894, executed and delivered to the defendant a quitclaim deed, and thereby conveyed to him all his interest in the lands described in the petition for said sum of $120; that plaintiff's interest therein was of the value of $2,000.

No claim being made or relief asked, under the second cause of action, it need not be considered; and the third cause of action is for rents and profits of plaintiff's share of the 120 acres, of which defendant was and has been in possession since 1874.

For a fourth cause of action, partition of the 120 acres is demanded, one-sixth thereof to plaintiff and five-sixths to the defendant.

The prayer for relief is: That the deed of October 25, 1894, be set aside; the defendant account for rents of the 120 acres from February 23, 1874, and that partition be made of the premises.

Defendant by answer puts in issue all the allegations of the petition, except he admits that plaintiff on October 25, 1894, was seized of one-seventh of one-eighth or one-fifty-sixth part of the 120 acres, as heir-at-law of his brother, James K. Manley, deceased; and one-sixth of one-seventh or one-forty-second part of said 120 acres as heir-at-law of his brother, Perry Manley, deceased. He further admits that James K. and Perry Manley each died without issue, unmarried and intestate; that on February 23, 1874, he, the defendant, purchased from Henry Shreve, as administrator of Robert Manley, deceased, all the interest of said Robert Manley in said 120 acres, and that he became a tenant in common with the plaintiff therein; that about 1864, plaintiff became seized of one-fifty-sixth part of the other lands described in the petition other than the said 120 acres, as heir of said James K. Manley, deceased, to-wit: in about $263\frac{7}{10}$ acres.

The contention centers upon three propositions:

First. What interest, if any, was excepted by the plaintiff, Samuel Manley, in the deed of January 24, 1852, to his brother, Robert Manley?

Second. Had plaintiff, on October 25, 1894, any interest or estate in the 120 acres, except the interest he inherited from his two brothers, James K. and Perry Manley, being the one-fifty-sixth and one-forty-second or one-twenty-fourth? If he excepted his interest in the 120 acres from the operation of the deed of October 25, 1852, then as heir of his father he would have one-eighth more, making his entire share one-sixth?

Third. Was there fraud practiced by the defendant in the purchase of the land in October, 1894?

The first question is to be determined by construction of the deed from Samuel Manley to Robert Manley of date of October 25, 1852.

At the time this deed was made Samuel Manley and Robert Manley were tenants in common in the lands of which their father died seized, each owning in fee one-eighth part of all the lands described in the deed of October, 1852. All of these lands were subject to the dower of the widow of their deceased father, which dower at the time said deed was made was unassigned. The deed in question is a quitclaim. Omitting certain unimportant recitals, it contains the words following, to-wit: " In consideration of the sum of $600 in hand paid by Robert Manley, we do hereby remise, release and forever quitclaim unto the said Robert Manley, his heirs and assigns forever, all our title, interest and estate, legal and equitable, except our right and title in the widow's dower, in the following described premises, etc."

It was not the purpose or intention of the grantors by this exception, to exempt themselves from liability against an incumbrance of the dower estate in the lands conveyed ; the deed contains no covenants of warranty. But did the grantors, by the use of the words, " except our right and title in the widow's dower in the premises described, etc.," retain the fee in any part of the premises described in the deed? It may be assumed that the parties to this deed understood that the dower of their mother could be assigned in any part or portion of the lands of which their father died seized, and that the dower estate would not be an estate in fee. If they so understood that the dower might be so assigned, and it would not include the fee, then, by excepting from the operation of the deed, their right and title in the dower, did they not intend to retain their estate in that portion of the premises described in the deed in which the dower should thereafter be assigned, wherever that might be? Such an exception would not be void for uncertainty. An exception is not void for uncertainty, because the boundaries of the land excepted must be shown by evidence. Painter v. Pasadena, L. & W. Co., 91 Cal., 74.

Afterwards the widow's dower was assigned in a portion of the premises described in the deed of October 1852, to wit, in the 120 acres here in controversy.

It is an obvious rule in the construction of grants containing an exception or reservation, that the thing excepted or reserved must be out of the thing granted, or parcel of that which would have passed by the grant, if not thus excepted or reserved. An exception or reservation of something not embraced in the premises would be simply void, there being nothing for it to operate upon. The words exception and reservation are often used indiscriminately, though there is a known distinction between them. An exception is separating part of that embraced in the description, and already existing in specie ; as excepting a particular parcel of land from a farm granted by general words. A reservation is something newly created, out of the granted premises by force and effect of the reservation itself, as an easement out of land granted, or rent out of land demised. In this deed the words are peculiar; they are, " except our right and title in the widow's dower." The meaning and intention could not be, that the grantors meant only the dower estate of the widow, because they had no right or title in the dower estate, either before or after assignment ; if the dower had actually been assigned by metes and bounds, such an exception would have been void either as an exception or reservation of the dower estate, because there was nothing for either to operate upon ; the grantors had no estate or interest in the dower.

But, when applied to the fee in that portion of the premises embraced in the deed, in which the dower estate could or should be assigned to the widow, then they are excepting or reserving something of their own, and existing at the time the deed was made.

With this view of what the grantors had, by force of the exception in their deed, their right and title in the widow's dower, it is clear the intention was to retain a fee in the premises embraced in the deed in which the widow's dower should thereafter be assigned. Such a construction brings the case within the scope or meaning of an exception, viz; that it must be a portion of the thing granted, or described as granted, and can be of nothing else; and must also be of something which can be enjoyed separately from the thing granted. If the exception be valid, the thing excepted remains with the grantors with the like force and effect as if no grant had been made. Such a construction of the deed of October 1852, is sustained by the following cases and authorities. Sloan et al. v. Lawrence Furnace Co., 29 Ohio St., 568; Craig et al. v. Wells, 11 N. Y., 315; Hurd v. Curtis et al., 7 Met., (Mass), 94, 110; Cutler v. Tufts, 3 Met. (Mass), 272, 277; Devlin on Deeds, Vol., 2 (2d Ed.), sec. 979; 4 Kent's Com., 468.

Counsel for defendant rely upon the case of Cincinnati v. Lessee of Newell's Heirs, 7 Ohio St., 37-40. That case is plainly distinguishable from this. There the exception was not in favor of the grantor but for the use of the public. For themselves in particular, the grantors excepted and reserved nothing. The public being a stranger to the deed, the exception could not operate in its favor. The law will never imply a covenant in favor of a stranger to the deed. It is well settled that an exception or reservation to a third person not a party to the deed is void. Craig v. Wells, 11 N. Y., 315, 323, and authorities cited on page 323.

The only case we have been able to find which tends to a contrary construction is Swick v. Sears, 1 Hill (N. Y.), 17. In that case it was a *warranty deed*. Tunis Swick died seized of the premises in question, leaving a widow named Charity, who afterwards married Eldreth Covert; and leaving also five children, of whom the plaintiff was one. All the other heirs had conveyed their interest to the plaintiff. The plaintiff then, by warranty deed, conveyed the premises to the defendant in fee, describing the same by metes and bounds, and immediately after the description was a reservation in the following words: "Reserving the equal undivided one third part of above described premises that is covered by the dower right of Charity Covert."

The case can not be regarded as a well considered one, no authorities are cited in support of the conclusion reached, and no discrimination is made between an exception and a reservation notwithstanding the obvious difference in their legal effect. The judge who announced the opinion says: "But we must look a little more closely to the reservation." "Reserving the equal undivided one-third part of above described premises." If the clause had stopped here, there would have been a plain exception of one third of the thing granted, and it would be difficult to resist the plaintiff's claim. But we are not at liberty to take one half of the clause, and reject the residue. We must read, and, if possible, give effect to every word which it contains. The remaining part of the clause points directly to the right of dower, as the subject which the parties had in mind—reserving one third of the premises that is covered by the dower of Charity Covert. Looking at the entire clause, I am

unable to resist the conclusion, that the plaintiff intended to convey the whole estate subject to the existing right of dower. It requires but a very slight change in the phraseology to make the matter quite plain. The plaintiff says by the deed, "I grant the two parcels of land ' reserving' excepting or subject to the dower right of Charity Covert, which covers the equal undivided one third part of above described premises. If the plaintiff intended to reserve one third of the estate to himself, why did he mention Charity Covert or her right of dower? I do not see what answer can be given to the question. In truth, the plaintiff is driven to the necessity of taking one half of the clause, and rejecting the residue, before he can make out his case. We think he is not at liberty to do so, and that upon the true construction of the deed, the plaintiff has parted with the entire estate which he had in the land."

This case came under review by the court of appeals of New York in Munn v. Worrell 53 N. Y. 44, in which it was held: "A deed containing this exception, 'saving and excepting from the premises hereby conveyed all, and so much, and such part and parts thereof as has or have been lawfully taken for a public road or roads.' Held, that the exception was of the land covered by a public highway across the premises, not simply of the public easement therein; that the fee of the land, so covered remained in the grantor and passed by a subsequent conveyance thereof to a third person. Referring to the case of Swick v. Sears, 1 Hill, pg. 17, Rapallo, J. says: The reservation was of "the undivided third of the premises, which was covered by the dower right of C." and was held to describe only the interest of the doweress. "If the dower had been at the time actually admeasured, and the deed had excepted "from the premises conveyed that part thereof which had been set off to C. on the admeasurement of her dower," the case would have been analogous to the present one and I apprehend the conclusion would have been different.

"None of the cases referred to present the features which exist in the present case, of an exception, from the premises described of a specific portion of such premises."

It is urged that, because the portion excepted is described as that part of the premises which has been lawfully taken for a public road, and only an easement therein could only be so lawfully taken, therefore an easement only was excepted. We cannot so understand the language; the word "premises," we think, clearly means, in the connection in which it is used, the tract of land described in the deed, and not the estate or interest of the grantor and the exception was of a portion of such premises, and not of an interest therein. By describing the excepted part as that portion which has been lawfully taken for a public road or roads, lands used as private road, or roads not lawfully established were excluded from the exceptions.

The court below found that the premises in controversy at the time of the conveyance from Tillou to Warner were included in and formed part of public roads passing over the property. We think that the fee therein was excepted from the conveyance and remained in Tillou and passed by his subsequent conveyance to the plaintiff, and that the court therefore erred in the conclusion that the plaintiff was not the owner thereof or of any right, title or interest therein."

Keeping in view the difference between a reservation and an exception as we have seen, viz: That a reservation is never of any part of the estate itself, but of something issuing out of it, as for instance, rent or

some right to be exercised in relation to the estate; as to cut timber upon it, and that an exception on the other hand, must be a portion of the thing granted or described as granted, and can be of nothing else, and must also be of something which can be enjoyed separately from the thing granted, (Shep. Touch, 77, 78, 80 ; Cunningham v. Knight, 1 Barb, S. C. Rep., 399; Starr v. Child, 5 Denio 599; Doe v. Lock, 4 Nev. & Man., 807), it is plain that there was more than the interest of the doweress excepted in the deed in controversy in this action. It is material also, to consider that the deed in Swick v. Sears, *supra*, was a warranty deed, while here it was a quitclaim, and the limitation are words of exception and not reservation, and to give effect to them as words of exception, we think that the fee in 120 acres was excepted from the conveyance of 1852 and remained in Samuel Manley.

Another rule of construction should be applied here. How did the parties themselves understand and interpret the deed?

The exception in Samuel Manley's deed must be construed according to the meaning of the parties, if not inconsistent with the rules of the law.

Samuel Manley always supposed he had an interest in his father's estate, notwithstanding the deed to his brother Robert of October 1852. He so claimed to the defendant Carl, and the defendant so understood it, because when he went to the plaintiff to make the purchase, he says '' he wanted to purchase his, Samuel Manley's interest in his father's and brother's estates.'' If there were no exceptions in the deed of 1852, Samuel Manley had no interest whatever in his father's estate. If this deed conveyed the entire fee in the premises described in the deed, he had nothing left but the interest he had inherited from his two brothers. The parties did not so understand it. Mr. Carl went to Missouri for the purpose of buying the interest of Samuel Manley in his father's estate, as well as in that of his two brothers. It is true Mr. Carl was not a party to the deed of 1852, but this does not entirely destroy the force of the rule of construction just mentioned. The acts and conduct of the parties following the parties who made the contract, must in the nature of the case be only their own construction of the words used, and not an acting out of the understanding of the words by the parties who used them. While the practical construction of a contract by the parties who made it, is entitled to great weight, in case of doubt, the construction placed thereon by those who follow is of much less weight, but of some weight, the difference is only in degree.

This rule of construction is recognized by the Supreme Court in Cincinnati v. Gas Light and Coke Co., 53 Ohio St., 278, 286, 287 and 288.

Our conclusion on the first proposition is, that Samuel Manley excepted from the deed to Robert Manley of October, 1852, his one-eighth interest in the 120 acres in which the dower was assigned.

Second : He owned then in October, 1894, a one-eighth interest in the 120 acres inherited from his father, and also one-twenty-fourth interest therein inherited from his two brothers, making his entire interest at the time of the conveyance to defendant, Carl, one-sixth or twenty acres.

The value of the twenty acres in October, 1894, from a fair preponderance of the evidence was not less than $60 per acre, or $1,200 But the plaintiff's title was not clear from incumbrance, being subject to an inchoate right of dower in favor of Samuel Manley's first wife. Taking into consideration the age of Samuel Manley and the probable age of

his wife, a reduction in the value of the land by reason of this inchoate right of dower should be made of $300.

The proof shows that a fair rental for the twenty acres, deducting taxes and repairs, would be two dollars per acre, $40 per year, and for the purpose of fixing the value of the estate and property sold and conveyed to the defendant for the consideration of $120, the net rental of the twenty acres for seven years amounts to $280, the value of the plaintiff's interest in the 120 acres, less the dower incumbrance $900 aggregating $1,180. The value of the one-fifty-sixth part of the $263\frac{7}{10}$ acres at $40 per acre is $188.40 and the net rental at two dollars per acre for six years, $56.50.

We therefore find the total value of the lands subject to the inchoate dower and the net rentals to be $1,424.90. This amount of property in October, 1894, was secured by the defendant from the plaintiff for the sum of $120.

Third—Was there fraud practiced by the defendant? This is mainly a question of fact; but looking at the whole transaction, and the situation of the parties at the time the purchase was made, it involves important legal questions as well as facts. The plaintiff lived in Missouri, he had not seen the lands in question for near forty years; he had not been in communication with any person in the neighborhood where the lands were located; he had no knowledge of their condition or value in 1894. The defendant lived on the premises, and had knowledge of their condition and value. It seems from the proof in the case that the plaintiff left Ohio some time in the sixties and went to the state of Missouri. He left a wife in Ohio or Indiana. He married a wife in Missouri, without being divorced from his first wife. Mr. Carl was in possession of this information as to plaintiff's domestic relations, and that his first wife was still living. He ascertains Mr. Manley's whereabouts in Missouri. He goes to Missouri for the purpose of buying the plaintiff's interest in these lands. He secures the assistance of attorneys and a party to ascertain the identity of the plaintiff as being the Samuel Manley who had formerly lived in Ohio, and the owner as a tenant in common with him in the lands in controversy. Whether Mr. Manley knew it at the time the deal between him and defendant was made, that his first wife was living, the testimony does not disclose. Mr. Carl had such information but he disclaims having any communication with Mr. Manley on that subject. The plaintiff's domestic relations became the subject of consideration and talk between the parties at same stage of the deal. Mr. Manley says he was then apprised of the fact that his first wife was living, and by reason of leaving Ohio as he had, it would be dangerous for him to return to Ohio. It would be dangerous for him to go there for the purpose of looking after his interest in these lands. And not being advised as to the condition or value of the lands he was unwilling and refused to fix a price upon the same in his negotiations with the defendant. Mr. Stuber, the attorney for the defendant in the transaction, says in his deposition, that Mr. Manley refused to fix the value. There is some conflict in the testimony as to who fixed the price at $120, but looking at the transaction in view of all the circumstances and surroundings of the parties, we are led to the conclusion that the offer came from Mr. Carl. He makes an offer first of $100, and then says if the deed is made that day he will give $120. What was he trying to buy? The interests of the plaintiff in these lands which were of the value of from $1,300 to $1,500.

He knew their condition and value. He had lived in the neighborhood and had lived upon the premises, and no one had any better opportunity of knowing their value than himself. The parties were not upon an equal footing in this regard. Mr. Manley, realizing his situation as to his lack of knowledge on the subject of value and condition, refused to fix a price on the property, although he was the seller.

When Mr. Carl made the offer of $120 he stated that the lands were worn out, in bad repair, and that they were of little value. He, as buyer, could have refused to offer, or fix a price, or give any information as to the condition or value of the land. He could have done this and would have been safe. But if he was more than silent, if he undertook to speak upon the subject as to their value and condition he must speak the truth. Neither can the defendant say that because he was not bound to answer the plaintiff's inquiry, he was not bound to answer it truly. Kelly v. Rogers, 21 Minn., 146.

If one of the parties to a sale assumes to have special knowledge of the value of the property, in regard to which the other being known to be ignorant, trusts entirely to the good faith and knowledge of the former, it may be very proper to treat representations of value as standing upon the same ground of representations of fact. 1 Bigelow on Fraud, p. 496 and authorities cited in note 2.

In an action by a seller of property for fraudulent representations and concealment made by the purchaser in regard to its value, by stating only a part of the truth, with the view of deceiving the other party, and inducing him to act differently from what he otherwise would, such acts are equivalent to false representations and will avoid a contract thereby induced. Mallory v. Leach, 35 Vt., 156.

When Mr. Carl made his offer of $120 for the interest of plaintiff in the lands, as an inducement for the plaintiff to accept his price, he said they were worn out, in bad repair, and that they were of little value. He knew then that these statements were untrue, just as well as when he returned to Ohio, and as he testified on reviewing the situation, and looking over his bargain, he came to the conclusion that he had gotten property for $120 worth at least $1,300. This was not fair dealing and may be properly characterized as a fraud.

Can a court of equity, looking at this transaction and viewing the parties as they were situated, give its sanction and uphold a contract that is so manifestly inequitable by reason of its gross inadequacy of consideration? It is true that parties must take some care of themselves, but the law will not tolerate a transaction in which advantage has been taken by one over the other, whereas in this case their means of information was so unequal.

We think there was fraud; that the plaintiff was wronged; that advantage was taken by reason of the gross inadequacy of consideratian; that there must must have been some advantage taken of him to lead him into such an inequitable and unconscionable bargain. The deed will be set aside, and judgment for rents and profits less the $120 paid.

It is contended that plaintiff to repudiate the contract and have the deed set aside, was bound to refund to the defendant the money as its consideration, or at least tender it back. This was not necessary. Insurance Co. v. Hull, 51 Ohio St., 270–283; Bebout v. Bodle, 38 Ohio St., 500, 504.

The defendant Carl being liable for rents and profits, the money can be adjusted by deducting the amount from the rental of the 120 acres,

Manley v. Carl.

and, the judgment will be accordingly. The question of repairs and taxes paid were taken in to account in fixing the rental value of the lands.

The plaintiff is entitled to a decree setting aside the deed of October 25, 1894, and for an order of partition and an accounting for rents in accordance with this decree.

*McClure & Smyser*, for plaintiff.

*Frank Taggart & A. D. Metz*, for defendant.